UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CASE NO.: 3:08-CV-23-TBR

NIRMALA NORONHA                                                        APPELLANT

v.

INTERNAL REVENUE SERVICE                                              APPELLEE


### MEMORANDUM OPINION

This matter is before the Court on appeal from the United States Bankruptcy Court for the Western District of Kentucky.  Nirmala Noronha appeals the Bankruptcy Court's December 5, 2007 Order (Docket #9).  The Appellee, the Internal Revenue Service, filed a Brief in response (Docket #11).  Appellant filed a Reply Brief (Docket # 12).  The matter is now ripe for adjudication.  The Court now **AFFIRMS** the Bankruptcy Court's Order.

### BACKGROUND

Appellant, Nirmala Noronha ("Noronha"),  filed for Chapter 13 bankruptcy on November 30, 2006.  The Internal Revenue Service ("IRS") filed a proof of claim in the bankruptcy case on January 7, 2007.  In its claim, the IRS asserted that Noronha owed the United States $170,222.81 for a trust fund recovery penalty assessed pursuant to 26 U.S.C. § 6672 for withholding taxes not paid by International Data Group, Inc. ("IDG"), a closely held corporation for which Noronha was a shareholder and secretary-treasurer.  Noronha filed an objection to the proof of claim, asserting that she was not responsible for collecting and paying IDG's withholding taxes and therefore was not liable for the tax penalty.  Following an evidentiary hearing, the Bankruptcy

1

Court issued an Order overruling Noronha's objection on December 5, 2007.  Noronha now moves the Court to review the Bankruptcy Court's Order denying her objection.

The following facts are undisputed.  Noronha is an educated woman who practices traditional Indian culture.  In 1988, Noronha, along with her husband, David Noronha ("David"), formed IDG, a computer programming staffing agency.  IDG, incorporated in Michigan, listed Noronha and David as the company's sole shareholders.  In March 1990, IDG was reorganized, several new shareholders were added, and IDG's operations moved to Louisville, Kentucky.  In July 1992, Noronha and David moved their family to Louisville.

From July 1992 until November 1993, Noronha worked part-time job as a computer programmer for Our Lady of Peace Hospital.  From1996 to the present, Noronha worked as a full-time computer programmer for William and Mercer, and its successor, ADP.  During 2000, Noronha was also an employee of IDG, receiving compensation and a W-2.  At the same time, beginning in 1998, Noronha's son was diagnosed with aplastic anemia, a potentially severe illness that required extensive medical care for at least the following five years.  Noronha and David shared the responsibility for caring for their ill son.

In June 1999, Noronha and David entered into a stock redemption agreement with the other shareholders, once again making Noronha and David the company's sole shareholders. Noronha assumed the roles of secretary-treasurer and fifty percent shareholder of IDG. Beginning in 1999, Noronha and David made several money transfers from personal and joint accounts to IDG in an effort to address cash flow problems.  In October 1999, Noronha and David took out a $140,000 home equity loan, the proceeds of which went to help IDG.  In August 2000, Noronha and David co-signed a revolving line of credit with PNC Bank for

2

$350,000.  Despite these money transfers, IDG was unable to solve its cash flow problems.  In the second and third quarter of 2000, IDG failed to pay its withholding taxes.

A field revenue officer from the IRS investigated IDG's unpaid taxes.  Based upon a review of a various financial records, the officer concluded that Noronha and David were both responsible for collecting the unpaid taxes due under 26 U.S.C. § 6672(a).  On November 3, 2000, Noronha signed IRS Form 4180, a "Report of Interview with Individual Relative to Trust Fund Recovery Penalty or Personal Liability for Excise Tax."  The name of the report, however, is misleading.  No interview was ever conducted by the IRS.

In early February 2001, Noronha called a special board meeting to request various financial records and discuss the business plan and tax delinquency status of IDG.  Following a dispute with David that took place at the February 16, 2001 meeting, Noronha handed David a formal letter of resignation.  However, that same day Noronha signed a signature card for IDG's bank account that gave her check writing authority over that account.  Noronha and David have since formally separated.

Noronha entered into a mediation agreement with David on March 6, 2001, wherein, as consideration for Noronha's forfeiture of any control she possessed over IDG, David agreed to indemnify her for all debts for which Noronha became liable for the benefit of IDG.  As of April 30, 2001, the tax amount due by IDG was $121,912.43.  The $170,221.81 proof of claim filed by the IRS is for the remaining tax due, in addition the penalties assessed and interest that has accrued since the date of assessment.

### STANDARD

The Court has jurisdiction to review this case under 28 U.S.C. § 158(a)(1).  Pursuant to

3

Federal Bankruptcy Rule of Procedure 8013, the Court reviews a Bankruptcy Court's findings under a "clearly erroneous" standard.  "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed."  *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 573 (1985) (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948)).  "This circuit has clearly enunciated that findings of facts of a bankruptcy court should not be disturbed ... unless there is 'most cogent evidence of mistake or miscarriage of justice.'" *In re Edward M. Johnson and Assocs.*, 845 F.2d 1395, 1401 (6th Cir.1988); *K&B Capital, LLC v. Off. Unsecured Creditor's Comm.* (*In re LWD, Inc.*), 340 B.R. 363, 366 (W.D. Ky. 2006). Determinations of witness credibility are to be given even greater deference.  Fed. R. Bankr. P. 8013.  Conclusions of law are reviewed *de novo*.  *See In re Morris*, 260 F.3d 654, 663 (6th Cir. 2001).

## DISCUSSION

Noronha presents two arguments on appeal.  First, Noronha argues that the Bankruptcy Court's factual determinations that Noronha was involved in the business operations of IDG and could have paid the withholding taxes are clearly erroneous.  Second, Noronha argues that the Bankruptcy Court's determination that Noronha's conduct constituted reckless disregard for her duties under 26 U.S.C. § 6672(b) is an erroneous conclusion of law.

### I.  Factual Findings

In her brief, Noronha contends that the bankruptcy judge made clearly erroneous factual findings in regard to Noronha's involvement in the business operations of IDG and her ability to pay withholding taxes to the IRS.  Specifically, Noronha disputes the bankruptcy judge's

4

findings in regard to Noronha's: (1) review of the information provided on IRS Form 4180; (2) request for check signing authority; (3) awareness of and attendance at IDG meetings; and (4) characterization of money transfers from her personal accounts to IDG as loans.

After an extensive review of the record, the Court concludes that the Bankruptcy Court did not commit clear error in finding that Noronha was involved in the business operations of IDG and could have paid the withholding taxes.  When viewed in its entirety, Noronha's testimony is at times ambiguous and inconsistent, especially during cross-examination.  Noronha was unable to recall whether or not she had reviewed IRS Form 4180 before she signed it.  While Noronha testified that she did not write the handwritten information contained on Form 4180, she also clearly testified that she signed it.  Furthermore, as the Bankruptcy Court noted, Noronha failed to corroborate any of her testimony in regard to Form 4180, which could have easily been done by calling Frank Monetary, an employee of IDG, who David testified handwrote the answers on Form 4180 for Noronha.

The record further demonstrates that Noronha requested check signing authority in an effort to gain more control and understanding over what was happening at IDG.  Noronha testified that her efforts to gain check signing authority and attend meetings were in regard to IDG's "cash flow" problems.  However, it was not clearly erroneous for the bankruptcy judge to conclude that these "cash flow" problems included IDG's tax problem.  Although Noronha maintained throughout her testimony that she was unaware of IDG's tax problems until November 2000, as secretary-treasurer of IDG, Noronha had access to IDG's financial records and books.  In addition, IRS Form 4180 stated that Noronha knew of IDG's tax problems since April 2000.

Noronha's testimony reveals that she was unsure whether the money taken out by David from their joint accounts constituted money transfers or loans.  However, she clearly expected to be repaid for the money she gave IDG from her 401(k).  Ultimately, the issue of whether Noronha made money transfers or loans to IDG was far from dispositive in regard to the Bankruptcy Court's finding that Noronha was involved in the business operations of IDG.  In particular, the Bankruptcy Court considered the evidence of a mediation agreement entered into between Noronha and David on March 6, 2001, consideration of which both parties failed to address in their briefs.

It is true that the Bankruptcy Court's Order failed to afford much weight to Noronha's testimony that she practiced an Indian culture wherein a wife does not readily question the business practices of her husband, complacently signed IDG documents only because David instructed her to, maintained a full-time job while also serving in her capacity at IDG, and all the while cared for her sick child.  Nonetheless, the Bankruptcy Court concluded that both Noronha and David's testimony lacked credibility.  Even supposing that the Court were moved by the record as Noronha's brief suggests, so long as the Bankruptcy Court's findings are plausible in light of the record viewed in its entirety, this Court may not reverse the Bankruptcy Court's Order.  This is true even if the Court is "convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Anderson*, 470 U.S. at 573-74.

For the foregoing reasons, the Court concludes that the Bankruptcy Court held a permissible view of the evidence in its entirety.  Accordingly, the Court affirms the factual

6

findings of the Bankruptcy Court.

## II.  Conclusions of Law

Section 6672(a) provides that any person who is required to collect withholding taxes and willfully fails to pay them to the government is personally liable for the full amount of the delinquent taxes.  26 U.S.C. § 6672(a); *see also Bell v. United States*, 355 F.3d 387, 392-93 (6th Cir. 2004) (describing the trust fund recovery penalty).  To be found liable under 26 U.S.C. § 6672, a debtor must: (1) be responsible for paying taxes, and (2) wilfully fail to turn over the tax money to the government.  *Bell*, 355 F.3d at 393;  *Kinnie v. United States*, 994 F.2d 279, 283 (6th Cir.1993).  Because tax assessments by the United States are presumptively correct, *U.S. v. Fior D'Italia, Inc.*, 536 U.S. 238, 243 (2002), the debtor bears the burden of "proving, by a preponderance of the evidence, that he was not a responsible person who willfully failed to pay over the withheld taxes." *Bell*, 355 F.3d at 393 (quoting *Collins v. United States*, 848 F.2d 740, 742 (6th Cir.1988)).

Noronha argues that the Bankruptcy Court erred in its conclusion that she was a responsible person within the meaning of 26 U.S.C. § 6671(b).[1]  In *Gephart v. United States*, the Sixth Circuit explained that "the test for determining the responsibility of a person under § 6672 is essentially a functional one, focusing upon the degree of influence and control which the person exercised over the financial affairs of the corporation and, specifically, disbursements of funds and the priority of payments to creditors."  818 F.2d 469, 473 (6th Cir. 1987).  The following factors are considered in determining who constitutes a responsible person for

---

[1] Section 6671(b) defines "person" as "an officer or employee of a corporation, or a member or employee of a partnership, who as such officer, employee, or member is under a duty to perform the act in respect of which the violation occurs."

7

purposes of determining tax liability:

(1) the duties of the officer as outlined by the corporate by-laws;

(2) the ability of the individual to sign checks of the corporation;

(3) the identity of the officers, directors, and shareholders of the corporation;

(4) the identity of the individuals who hired and fired employees;

(5) the identity of the individuals who are in control of the financial affairs of the corporation.

*Id. See also Kinnie v. United States*, 994 F.2d 279, 283 (6th Cir. 1993). None of the factors, however, is dispositive. *Gephart*, 818 F.2d at 473-74. Furthermore, more than one person can serve as a responsible person within a corporation. *Id.* "The crucial examination is whether a person had the 'effective power to pay taxes.'" *Raba v. United States*, 977 F.2d 941, 943 (5th Cir. 1992) (citation omitted).

From November 3, 2000 until March 6, 2001, Noronha was incontrovertibly aware of the IDG's withholding tax liability. Noronha also had check signing authority from August 2000 until May 2001. Therefore, Noronha had the effective power to pay IDG's withholding taxes, at the very least, from November 2000 until early March 2001. Noronha also served as secretary-treasurer of IDG at that time. While it may be true that Noronha's responsibilities in regard to IDG did not typically include the payment of withholding taxes and she did not believe paying the taxes was within her control, it nonetheless remains true that Noronha was a director and shareholder of IDG and had the ability to pay the taxes.

A person willfully fails to turn over tax money to the government if she "ha[s] knowledge of the tax delinquency and knowingly fail[s] to rectify it when there [are] available funds to pay the government." *Gephart*, 818 F.2d at 475. "A failure to pay over taxes is willful, for section

8

6672 purposes, if it is voluntary, knowing and intentional even though it is not done with a bad purpose or an evil motive." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (citing *Barnett v. United States*, 594 F.2d 219, 222 (9th Cir.1979) (citations omitted)). A person who acts with a recklessly disregard for obvious or known risks has also acted willfully for purposes of section 6672. *Cooper v. United States*, 827 F.Supp. 1309, 1314 (E.D. Mich. 1993), *aff'd*, 66 F.3d 325 (6th Cir. 1995) (citations omitted).

Noronha relies on her Indian culture to explain her inability to effectively pay IDG's withholding taxes once she became aware of them. She claims that David had responsibility over the happenings at IDG and she was powerless to effectuate any control over the business dealings. However, the factual findings of the Bankruptcy Court demonstrate that Noronha was aware of the tax liability and nonetheless repeatedly failed to examine the documents from IDG and request more information from the IRS.

For the foregoing reasons, the Court finds that Noronha was a responsible and willful person within the meaning of 26 U.S.C. § 6672. As such, she has failed to meet her burden of proof to disprove tax liability by a preponderance of the evidence. Accordingly, the Court affirms the Bankruptcy Court's conclusions of law.

## CONCLUSION

For the above reasons, the Court **AFFIRMS** the Bankruptcy Court's Order. An appropriate Order shall follow.